**David LEMOS, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 08–02–00524–CR.

Court of Appeals of Texas, El Paso.

March 11, 2004.

M. Clara Hernandez, El Paso County Public Defender, El Paso, TX, for Appellant.

Jaime E. Esparza, District Attorney, El Paso, TX, for State.

Before Panel No. 4 BARAJAS, C.J., LARSEN, and McCLURE, JJ.

## OPINION

SUSAN LARSEN, Justice.

David Lemos appeals his conviction for two counts of intoxication manslaughter and two counts of causing an accident involving injury or death. Finding the trial court erred in precluding defense counsel from arguing a legitimate inference from the evidence, and further finding that the error was harmful, we reverse and remand.

### Facts

Just after midnight on April 6, 2002, El Paso Police Officer Charles Walker responded to a complaint of a fight with

weapons on Van Buren Street, which is one-way westbound. Upon arriving at the scene with lights flashing and siren on, Officer Walker stopped in the left lane as a woman flagged him down. He observed a blue car traveling the wrong way on Van Buren, headed toward him at a high rate of speed. The car's headlights were off and its windshield was shattered. The car swerved to miss the squad car, and continued the wrong way down the street. Walker made a U-turn and pursued the vehicle. Almost immediately, he saw the blue car collide with a black car at the intersection of Van Buren and Dyer Streets. Walker gave chase on foot after he saw the driver of the blue car flee westbound. Walker shortly caught and arrested David Lemos, who was bleeding from his face and head and had a "strong odor of alcohol on his breath." Lemos was taken to the hospital and treated, and his blood was drawn one hour and forty minutes after the accident in order to determine blood alcohol content, which was .10 at that time. Both occupants of the black car died from injuries sustained in the crash. Lemos's manslaughter indictments contained only the theory that he was intoxicated by reason of "having an alcohol concentration of .08 or more."

At trial, neither the State nor Lemos offered expert testimony concerning retrograde extrapolation.[1] During closing argument, counsel for the defense repeatedly attempted to point out to the jury that while the State had proven Lemos's blood alcohol content was over the legal limit nearly two hours after the fatal accident, there was no evidence of what it had been at the time of the crash. Defense counsel then attempted to suggest that the jury could as easily infer Lemos's alcohol level went up after the crash as it could infer it had decreased. The prosecutor objected to this argument as being beyond the scope of the evidence. The following lengthy exchange took place before the jury:

> Defense Counsel: So, what I'm going to suggest to you is that when you have only this information, what it was an hour and a half later, you cannot reach a logical conclusion about what it was around midnight or shortly thereafter. You don't have enough information. Because what I'm going to suggest to you, as a matter of logic, is that blood alcohol concentration can also be going up as well as going down.

> Prosecutor: Objection, Your Honor. Again, he's arguing outside the scope.

> The Court: That, I will sustain. There is no evidence to support that argument, Mr. Ponder.

> Defense Counsel: There's no evidence to support the argument[?].

> The Court: Mr. Ponder, don't argue with the Court.

> Defense Counsel: May I address the Court? I respectfully submit that the Court is incorrect, that the Jury is entitled to make inferences.

> The Court: Just a moment. You may argue the evidence, but you cannot inject theories that were not presented by way of evidence, sir.

> Defense Counsel: I'm not, Your Honor. I am arguing about inferences, and I believe that it is a fair inference from the evidence, as fair as the inference that his blood alcohol was declining, that his blood alcohol was rising.

> The Court: You premised that on the common sense that alcohol leaves the

---

1. Retrograde extrapolation is a method of estimating the blood alcohol content of a person at a certain time based on a test result from some time later. *See Bagheri v. State,* 119 S.W.3d 755, 758 (Tex.Crim.App.2003).

body, otherwise we'd all be walking around drunk. That's a common sense conclusion or inference. But there is no testimony about any theories of alcohol level increasing, so I'm going to sustain the objection.

Defense Counsel: There is no evidence about the alcohol evidence decreasing, Your Honor, or remaining the same. There is none, period. There was no testimony from any witness–

Prosecutor: Objection, Your Honor.

Defense Counsel: –that–

Prosecutor: Your Honor, may I object to the leading [sic] objection as he argues with the Court, Your Honor.

The Court: Mr. Ponder–

Defense Counsel: Judge, may we approach? I think this is a key point in this case.

The following exchange took place at the bench, presumably out of the jury's hearing:

The Court: Tell me what witness testified the theory of alcohol level can increase as time passes.

Defense Counsel: No witness testified to that.

The Court: What is the basis for the argument?

. . .

Defense Counsel: The same basis that would allow the State to argue that it decreased or it remained the same. There is no evidence that says that that happened, so all you have when you have–

The Court: There's two things we're talking about here. One is, what is the basis for your argument that the alcohol level increased from midnight to 1:40? And there is no evidence.

. . .

Defense Counsel: Common sense says, Your Honor, alcohol does not remain a constant.

The Court: It dissipates.

Defense Counsel: It also has to go up, doesn't it? It's impossible to have an alcohol constant without rising. It sits in your stomach. As it gets into your blood, it will be going up. Once it's in your blood, it will be going down. It is not a constant. What goes up–

The Court: That's a very good argument that you're making here, but you don't have any evidence. You could have called an expert who could have testified if you ingested it at 1 o'clock, it won't be in your bloodstream until 1:40, but you didn't bring a witness to testify to that.

. . .

The Court: I'm going to make my final ruling. I don't want any more argument. You will not argue the theory that the alcohol level was rising. There is no evidence to support that theory. There is no evidence to support an argument that he had a drink at a given point in time and that it was rising up until 1:40 in the morning.

Defense Counsel: We would make a motion for directed verdict. There's no evidence what his content was at the time of the accident.

The Court: Directed verdict denied.

Moreover, while precluding the defense from arguing its inference that Lemos's blood alcohol content may have risen between the time of accident and time of testing, the trial court allowed the State to argue the inverse:

Prosecutor: Ladies and Gentlemen, he was intoxicated at the time of the acci-

dent. His breath alcohol concentration was .10 at the time they took the blood. Common sense tells you he was intoxicated at the time of the collision.

Defense Counsel: Your Honor, we are going to object to this argument as being an impermissible inference because there is *no evidence to support it.*

The Court: Overruled.

The jury found Lemos guilty on all four counts charged.

### Improper Denial of Jury Argument

■ In his first issue on appeal, Lemos argues that the trial court improperly precluded his counsel from arguing that defendant's drug alcohol concentration could have been rising, rather than falling, between the time of the collision and the time his breath was tested. We agree, as does the State.

■ Although the trial court has broad discretion in controlling the scope of closing argument, it may not prevent defense counsel from making a point essential to the defense. Prohibiting counsel from making such a jury argument is a denial of the defendant's right to counsel when that argument is one the defendant is entitled to make. *McGee v. State,* 774 S.W.2d 229, 238 (Tex.Crim.App.1989), *cert. denied,* 494 U.S. 1060, 110 S.Ct. 1535, 108 L.Ed.2d 774 (1990). Only when the trial court restricts the defense counsel from doing something it had the legal right to do, however, is it considered a deprivation of counsel. *Jackson v. State,* 992 S.W.2d 469, 476 (Tex.Crim.App.1999). The defense has the legal right to argue any theory supported by the evidence. *Cf. Brown v. State,* 955 S.W.2d 276, 279 (Tex. Crim.App.1997). All inferences from the evidence that are legal, fair, and legitimate may be argued by defense. *Melendez v. State,* 4 S.W.3d 437, 442 (Tex.App.-Houston [1st Dist.] 1999, no pet.), *overruled on other grounds by Small v. State,* 23 S.W.3d 549 (Tex.App.-Houston [1st Dist.] 2000, pet. ref'd).

Here, we cannot see that defense counsel was doing more than suggesting that the jury draw certain inferences from the evidence, or lack thereof, on Lemos's blood alcohol level at the time of the accident. Nothing should have prevented defendant from "arguing that his alcohol concentration increased from the time of arrest to the time of testing." *Forte v. State,* 707 S.W.2d 89, 94–95 (Tex.Crim.App.1986). The State concedes that excluding the argument was erroneous. *See Garcia v. State,* 112 S.W.3d 839, 850–51 (Tex.App.-Houston [14th Dist.] 2003, no pet.); *Verbois v. State,* 909 S.W.2d 140, 142 (Tex. App.-Houston [14th Dist.] 1995, no pet.). We must conclude that the trial court committed error in preventing trial counsel from arguing this legitimate inference to the jury.

### Harm Analysis

■ Having concluded that the trial court erred in disallowing the argument, we must decide whether the error caused harm warranting reversal. Tex.R.App. P. 44.2. This, in turn, requires us to determine whether the error was constitutional in dimension or involved other substantial rights. *Id.*

■ The Texas Court of Criminal Appeals has held that an improper denial of a jury argument can constitute a denial of the right to counsel. *Johnson v. State,* 698 S.W.2d 154, 166 (Tex.Crim.App.1985) (citing *Riles v. State,* 595 S.W.2d 858, 861 (Tex.Crim.App.1980)). Denial of the right to counsel is an error of constitutional magnitude. U.S. Const. amend. VI; Tex. Const. art. I, § 10. A criminal defendant's constitutional rights to counsel and to a jury trial encompass a right to have his

theory of the case argued vigorously to the jury. *See U.S. v. DeLoach,* 504 F.2d 185, 190 (D.C.Cir.1974) (Restrictions on defendant's closing argument were violation of constitutional right to counsel, and not harmless beyond reasonable doubt.).

In contrast, the State relies on *Martinez v. State,* 17 S.W.3d 677, 692 (Tex.Crim. App.2000) and *Mosley v. State,* 983 S.W.2d 249, 259 (Tex.Crim.App.1998), for its claim that harm should be assayed under the rule that we disregard any non-constitutional error not affecting substantial rights. TEX.R.APP. P. 44.2(b). *Mosley* and *Martinez,* however, both deal with improper argument by a prosecutor and not with the denial of a proper argument by defense counsel. *Martinez,* 17 S.W.3d at 692; *Mosley,* 983 S.W.2d at 259. Thus, we cannot see that they control here. We conclude that we must evaluate harm under TEX.R.APP. P. 44.2(a), which requires us to reverse unless we determine beyond a reasonable doubt that the error did not contribute to Lemos's conviction.

The State next asserts that Lemos did manage to argue that the State's evidence only proved his blood alcohol content at the time blood was drawn, not when the crash occurred, and thus he did not suffer any harm. We find this contention ignores the effect of cumulative adverse rulings. Clearly, it was a central theory of the defense case that the State had failed to prove Lemos was in the elimination phase of alcohol concentration when he was tested, and it was therefore not shown beyond a reasonable doubt that he had a level of .08 or higher when the accident occurred. When Lemos's counsel attempted to make the argument that defendant's levels may have been rising after the accident, the State objected and the trial court sustained. This led to the lengthy discourse outlined above. Moreover, and more importantly, the trial court stated in front of the jury that there was no evidence to support Lemos's argument, while commenting that the State's argument that Lemos's blood alcohol content was falling was only "common sense."

We therefore find the erroneous denial of a legitimate defensive theory caused Lemos harm, and we cannot find beyond a reasonable doubt that the harm did not contribute to his conviction or punishment. His first issue is sustained.

### Motion to Consider Unassigned Error

■ In a motion filed one day before this case was submitted, Lemos urges this Court to consider issues not raised in his original brief, concerning whether his blood alcohol concentration test, unaccompanied by reliable evidence of retrograde extrapolation, is insufficient to establish blood alcohol at the time of the accident. We have reviewed his motion and *Stewart v. State,* 103 S.W.3d 483, 486 (Tex.App.-San Antonio 2003, pet. granted) and *Bagheri v. State,* 119 S.W.3d 755, 763 (Tex. Crim.App.2003), the cases upon which he relies in arguing that we should re-examine our decision in *Carrillo v. State,* 2003 WL 1889943 (Tex.App.-El Paso April 17, 2003, pet. filed) (not designated for publication). We note that the San Antonio court's decision in *Stewart* was issued on January 8, 2003 and San Antonio's decision in *Bagheri* was issued in 2002,[2] both well before Lemos's brief on appeal was filed in this Court. Nothing precluded his counsel from arguing for a re-examination of *Carrillo* at that time; that the Court of Criminal Appeals has now written on *Bagheri* and granted review on *Stewart* does not persuade us otherwise. Moreover, our decision to reverse on Lemos's first issue diminishes our concern that the interests

2. *Bagheri v. State,* 87 S.W.3d 657 (Tex.App.-San Antonio 2002, pet. granted).

of justice might require us to consider the unassigned issues. The motion is denied.

### Conclusion

Because we sustain Lemos's first issue, because he raises no render points in his brief on appeal, and because we do not find a compelling reason to consider unassigned error, we need not reach his other issues. We reverse and remand for further proceedings consistent with this opinion.