Criminal Case Template






COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



DELIA MARTINEZ,

                            Appellant,

v.

THE STATE OF TEXAS,

                            Appellee.

§

§

§

§

§

No. 08-05-00116-CR

Appeal from the

205th District Court

of El Paso County, Texas

(TC# 20030D02379)




O P I N I O N

            This is an appeal from a jury conviction for two counts of failure to stop and render aid. The
court assessed punishment at five years’ community supervision. We affirm.
FACTUAL SUMMARY
            On May 6, 2003, Maria Chavez was driving with her young daughter on Montana Street. She
proceeded through the intersection at Gateway North on a green light. Another vehicle ran the red
light and struck her car, causing it to spin around. Chavez did not see the vehicle that hit her. She
felt pain to her neck and shoulders, and her daughter hit the side of her face. The driver of the other
vehicle left the scene.
            Roderick Mendoza was working at his family business when he heard the collision. He
looked outside and saw a white car speed off. He did not get a good look at the driver’s face but he
determined that the driver was a woman because he saw a silhouette of her hair.
            The first police officer who arrived on the scene found a license plate in the intersection. He
issued a spot broadcast to other police units indicating that the license plate probably belonged to
the fleeing vehicle. Officer Ricky L. Jordan ran the number through the computer in his patrol car
and determined that the car was registered to Appellant. Officer Jordan went to Appellant’s address,
identified the vehicle from the collision, and saw Appellant getting into another car by herself.
            When Officer Jordan spoke to Appellant, he realized that she only spoke Spanish. He called
for assistance, and Officer Alex Bastidas responded. About the same time, Appellant’s husband,
Luis Carlos Martinez, came out of the house and asked what was happening. Officer Jordan spoke
with Mr. Martinez in English. Officer Bastidas explained to Appellant he would take her back to
the scene of the accident to see if any witnesses could identify her. Appellant was not handcuffed. 
            Officer Robert Calderon and his partner, Officer Pineda, were still at the scene of the
accident. Officer Pineda estimated that the accident had occurred around 5:35 p.m. While Officer
Calderon was interviewing the witnesses, one pointed behind him. He turned to see Appellant arrive
in Officer Bastidas’s patrol car. The witness pointed to Appellant and indicated that she was the
driver who had fled the scene. The officer stated that the witness had an unobstructed view of
Appellant sitting in the patrol car when she first arrived.
            Appellant was transported to the police station and placed in a cell. When she complained
of back pain, EMS was called, but Appellant refused transportation to the hospital. While Officer
Calderon was typing his report, Appellant spoke to him without prompting. She told him she had
panicked, that she had been driving for over thirty years, and that this was her first accident. She was
scared and had left the scene, but she was going to have her husband drive her back.
            The defensive theory at trial was that Mr. Martinez was actually driving the car. The couple’s
son, Carlos, testified that on the day of the accident, Appellant got home at 4:40 p.m. and started
doing some laundry. His father arrived sometime later. In response to a question about his father’s
demeanor, Carlos testified his father said, “[t]hat he had hit a lady.” The court did not rule on the
prosecutor’s objection that Carlos’s statement was non-responsive to the question; however, the
witness was instructed not to state what others had told him. Carlos testified that some police
officers arrived at the house and arrested his mother. None of the officers spoke to Carlos.
            Appellant testified in her own behalf. The family owned two vehicles, a Geo and an
Oldsmobile Ciera. Her husband normally drove the Geo, which was the car involved in the collision. 
Appellant usually drove the Ciera. Both vehicles were registered in her name. Appellant arrived
home from work at about 4:45 p.m. and started some laundry. Her husband got home sometime after
5 p.m. He was nervous and pale. When Appellant asked how his day had been, he seemed
distressed. After he told her about the accident, Appellant got her keys and said they needed to go
back to the scene of the accident. As she was getting into her car, the police arrived.
            Appellant claimed that all she said to Officer Calderon was that she had been driving for
thirty years and had never had an accident. She denied telling him that she had gotten scared and
fled the scene. When Appellant informed the court that she intended to call her husband as a
witness, counsel for Mr. Martinez advised him to invoke his Fifth Amendment right against self-incrimination. The husband verified that he had elected not to testify, and he did not take the witness
stand.
RESTRICTION OF ARGUMENT
            In Issue One, Appellant contends that the court prevented her from arguing that her husband
committed the offense. During closing argument at the guilt-innocence stage of trial, the following
exchange occurred:
DEFENSE:It is a shame that the wrong person is being put through this. Okay. 
That’s a shame. Why is it a shame? Because her husband is the one
that was driving the car.
 
STATE:Your Honor, I am going to object to defense attorney referencing to
evidence that was not presented to the jury.
 
COURT:The objection is sustained.
 
DEFENSE:Judge, I believe that circumstantially speaking, Your Honor, that’s a
deduction they can make with the circumstantial evidence, Your
Honor. 
 
COURT:The evidence did not show that. If that’s an inference, the jury can
make on their evaluation, that’s something they can do. 
 
DEFENSE:Well, you can make that inference with the evidence that was
presented here before you. You can certainly make that inference. 
Think about it. Her son gets there like at 4:00, 4:30, whatever time
it was. I think it was 4:00. And then my client gets there at about
4:45-ish. She gets off work at 4:30-ish. She gets there at 4:45-ish. 
Okay. She starts doing some, washing some clothes. Her husband
shows up sometime after that. She is watching a show on tv,
television show. Okay. And then she comes outside the car, goes to
the car, where she is going to take, she is going to go back to the
scene and get her husband back to the scene and then what happens? 

            Jury argument must fall within one of four general areas: (1) summation of the evidence; (2)
reasonable deductions from the evidence; (3) answer to argument of opposing counsel; and (4) plea
for law enforcement. Kinnamon v. State, 791 S.W.2d 84, 89 (Tex.Crim.App.1990). Counsel may
draw all reasonable inferences from the facts in evidence that are “reasonable, fair, and legitimate.” 
But an argument that misstates the law or is contrary to the court's charge is improper. Grant v.
State, 738 S.W.2d 309, 311 (Tex.App.--Houston [1st Dist.] 1987, pet. ref’d).
            Although the trial court has broad discretion in controlling the scope of closing argument,
it may not prevent defense counsel from making a point essential to a defensive theory of the case
if it is supported by the evidence. Such a prohibition amounts to a denial of the defendant’s right
to counsel. McGee v. State, 774 S.W.2d 229, 238 (Tex.Crim.App.1989), cert. denied, 494 U.S.
1060, 110 S.Ct. 1535, 108 L.Ed.2d 774 (1990); Lemos v. State, 130 S.W.3d 888, 892 (Tex.App.--El
Paso 2004, no pet.).
            Appellant cites Lemos in support of his contention that the court’s restriction of his argument
warrants reversal. There, the accused was charged with intoxication manslaughter. Evidence
indicated that his blood alcohol level was .10 one hour and forty minutes after the accident. No
retrograde-extrapolation evidence was offered. Id. at 890. Defense counsel tried to argue that the
defendant’s blood-alcohol level could have been rising, rather than falling, at the time of the
accident. Id. at 890-91. The court sustained the State’s objection that the argument was outside the
scope of the evidence, and told the jury the State’s argument made common sense. Id. at 893. On
appeal, the State conceded that the argument should not have been allowed. While the State claimed
harmless error, we found the error to be harmful under the standard enunciated in Tex.R.App.P. 
44.2(a). Id. at 893.
            Here, Appellant was not prohibited from presenting her defense that her husband was actually
driving the car. Though she was prevented from directly arguing the issue, the jury could properly
infer that such was the case. In fact, her attorney argued, “My client was not the driver of that car. 
That day. No, she drives the other car, the Ciera car, that’s her car. That’s the car that she drives.” 
Counsel also argued that no witness at trial was able to identify Appellant as the driver. As
Appellant was able to develop her defensive theory, we perceive no error. We overrule Issue One.
 

EXCLUSION OF HEARSAY STATEMENTS
            In Issue Two, Appellant complains that the court erred in excluding testimony that Mr.
Martinez told Appellant and Carlos that he had been involved in an accident. She claims that the
statements were admissible as either excited utterances or statements against penal interest.
            Carlos testified his father told him “[t]hat he had hit a lady.” Carlos described him as
“freaking out,” “in shock,” “real nervous,” “scared,” and “panicking.” Carlos did not remember the
date of the accident, nor could he remember how much time had elapsed between the accident and
his father’s statements. The court indicated it needed additional information on the date and time
frame before admitting the statements as excited utterances.
            Appellant testified that she got home at approximately 4:45 p.m. She was washing clothes
when her husband arrived sometime after 5 p.m. He was nervous and pale. She asked how his day
at work had been, and he seemed upset. Appellant then sought to have her husband’s responses
admitted as excited utterances and as statements against penal interest. On voir dire examination,
Appellant testified that after she asked her husband how his day at work had gone, he said, “It went
okay at my job but right now a woman, she got in front of me and I hit her.” He stated that he left
the scene because the woman in the other car also left. Appellant described her husband as usually
very joyful, but when she saw his expression, “the way his eyes looked told [her] everything.” The
court concluded that the excited utterance exception had not been established:
COURT:She can testify as to what she observed and the agitation and the fact
that it was the day of the arrest but as to being specific and the way
that, right now the way that I hear the testimony, I am going to have
to sustain the objection unless there is any other information. 



Standard of Review

            We review the court’s ruling for an abuse of discretion. Zuliani v. State, 97 S.W.3d 589, 595
(Tex.Crim.App. 2003). The trial court does not abuse its discretion unless the ruling lies outside of
the zone of reasonable disagreement. Id. This standard applies to both the excited utterance or
statement against penal interest exceptions to the hearsay rule, and the trial court’s ruling should not
be reversed unless a clear abuse of discretion is shown. See Apolinar v. State, 155 S.W.3d 184, 186
(Tex.Crim.App. 2005); Bingham v. State, 987 S.W.2d 54, 57 (Tex.Crim.App. 1999).
Excited Utterance
            Hearsay is a statement, other than one made by the declarant while testifying at a trial or
hearing, offered in evidence to prove the truth of the matter asserted. Tex.R.Evid. 801(d). For
hearsay to be admissible, it must fit into an exception provided by a statute or the rules of evidence. 
Tex.R.Evid. 802. One exception is an excited utterance. Tex.R.Evid. 803(2). An excited utterance
is “[a] statement relating to a startling event or condition made while the declarant was under the
stress of excitement caused by the event or condition.” Id.; Salazar v. State, 38 S.W.3d 141, 154
(Tex.Crim.App. 2001). In determining whether a hearsay statement is admissible as an excited
utterance, the ultimate inquiry is “whether the declarant was still dominated by the emotions,
excitement, fear, or pain of the event or condition” when the statement was made. Apolinar, 155
S.W.3d at 186-87. The court may consider factors such as “the length of time between the
occurrence and the statement, the nature of the declarant, whether the statement is made in response
to a question, and whether the statement is self-serving.” Id. at 187. However, no single factor is
dispositive, but merely bears on our ultimate determination. See Lawton v. State, 913 S.W.2d 542,
553 (Tex.Crim.App. 1995); Penry v. State, 903 S.W.2d 715, 750-51 (Tex.Crim.App. 1995).
            Both Appellant and Carlos testified that Mr. Martinez was in an agitated state when he
arrived home. While neither witness could exactly identify the time, both statements were
purportedly made shortly after the distressing event. The State concedes the court could have
admitted the statements, but the issue is whether the ruling is within the zone of reasonable
disagreement. Zuliani, 97 S.W.3d at 595. The court could have reasonably concluded that the traffic
accident was not such a startling event that Mr. Martinez was still dominated by the emotions,
excitement, fear, or pain of the event or condition when the statement was made. The accident was
not of a serious nature; the vehicle was still operable and the injuries were relatively minor. The
statements were made in response to a question and were untrue since the driver of the other car had
not left the scene. Because the ruling was within the reasonable zone of disagreement, we find no
abuse of discretion.
Statement Against Interest
            Appellant also maintains that Mr. Martinez made statements against interest. Rule 803(24)
provides an exception to the hearsay rule:
A statement which was at the time of its making so far contrary to the
declarant’s pecuniary or proprietary interest, or so far tended to subject the declarant
to civil or criminal liability, or to render invalid a claim by the declarant against
another, or to make the declarant an object of hatred, ridicule, or disgrace, that a
reasonable person in declarant’s position would not have made the statement unless
believing it to be true. In criminal cases, a statement tending to expose the declarant
to criminal liability is not admissible unless corroborating circumstances clearly
indicate the trustworthiness of the statement.

            Whether a statement is admissible requires a two-step inquiry. Bingham v. State, 987 S.W.2d
54, 57 (Tex.Crim.App. 1999). First, the trial court must determine whether the statement tends to
expose the declarant to criminal liability. Id. Second, corroborating evidence must be sufficiently
convincing to “clearly indicate the trustworthiness of the statement.” Id.; see also Dewberry v. State,
4 S.W.3d 735, 751 (Tex.Crim.App. 1999). The burden is on the proponent and “the test is not an
easy one.” Davis v. State, 872 S.W.2d 743, 749 (Tex.Crim.App. 1994).
            Appellant did not proffer her husband’s statements to Carlos as admissions against interest.
And while she proffered the statements made to her as statements against penal interest, she did not
obtain a ruling on that theory. See Tex.R.App. P. 33.1(a). Because error has not been preserved, we
overrule Issue Two.
LEADING QUESTIONS
            In Issue Three, Appellant complains that the court prevented her from explaining the
statements she made to police after her arrest by repeatedly sustaining the prosecutor’s objections
to leading questions:
            DEFENSE:     You heard the officer testify as to that part about you complaining that your
back hurt. Do you remember that?
 
STATE:I would object to leading.
 
COURT:Sustained. Please restate the form of the question.
 
DEFENSE:Do you remember when the officer was testifying about how your
back was hurting you? Do you remember that?
 
STATE:Your Honor, I am going to object to leading.
 
COURT:The objection is leading, sustained. Please restate the form of the
question.
 
DEFENSE:I am sorry, Your Honor, but I am not leading. I don’t think trying to
elicit a certain answer from her, [sic] Your Honor, either she
remembers that and if she does remember that, that’s what I want to
ask her about a certain statement about her being hurt, that’s all.
 
COURT:You can ask her directly.
 
DEFENSE:Well that’s what I am attempting to do. Did you tell the officers that
your back was hurting you because you were involved in a car
accident?
 
STATE:Your Honor, I am going to object to the leading nature of the
question. 
 
COURT:Sustained.
 
DEFENSE:Wow. Was your back hurting you because you were involved in a car
accident?
 
WITNESS:Of course not. It had already passed two hours since I had gotten out
of work and I do have arthritis. You can see it in my fingers and it
was just a normal pain.
 
DEFENSE:And if you remember when the officer testified about how you
supposedly told him that you had gone home and you were panicking
due to the accident?
 
STATE:Your Honor, I am going to object to the leading.
 
COURT:Objection sustained. Please restate the form of the question.
 
DEFENSE:Did you ever tell the officer that you had arrived home and panicked
due to the accident?
 
STATE:Your Honor, I am going to object to the leading.
 
COURT:The objection is sustained.
 
DEFENSE:Your Honor, I am doing this because an officer testified to this and I
am going to ask her if that was true or not and I think I have every
right to ask that type of question to get to the truth and veracity of this
witness, Your Honor.
 
COURT:The objection is sustained.
 
DEFENSE:It is in the rules of evidence in the 600, Your Honor. 
 
COURT:The objection is leading. Sustained. Please restate the form of the
question.
 
DEFENSE:I don’t think I am eliciting a certain response from her, Your Honor,
but I will see what I can do. Did you ever tell an officer that you
panicked due to the accident?
 
STATE:Your Honor, I am going to object to leading.
 
DEFENSE:How is that leading? She can say yes or no. I mean we are trying to
get--may I approach, Your Honor?
 
COURT:Yes.

(Bench Conference)
 
STATE:Your Honor, leading questions are answered by yes or no.
 
DEFENSE:I just don’t understand how--I am not telling her to say yes, I am not
telling her to say no. Either it is a yes or no. I mean I don’t see how
I am eliciting an answer from that.
 
COURT:The question results in a response yes or no.
 
DEFENSE:No, no, it doesn’t. Trying to elicit a certain answer, that’s a leading
question.
 
COURT:Why don’t you ask her what did you tell the officer?

(Bench Conference Ends)
 
DEFENSE:Shortly before you were taken to the cell did you say anything to the
officers?
 
WITNESS:No.
 
DEFENSE:Do you remember telling the officer--I know what’s going to happen
right now--that’s. Did you ever talk about how many years you had
been driving, do you remember that?
 
STATE:Your Honor, I am going to object to the leading question.
 
COURT:Sustained.
 
DEFENSE:At the cell did you say something to the officer when he was taking
his report?
 
WITNESS:Of course I did.
 
DEFENSE:What was that?
 
WITNESS:He asked me a question and I said, Why are you asking me that? And
he told me, I am writing up a report. Then write in there that I have
been driving for 30 years and I have never had an accident and I have
never had any problems, any traffic problems. 
 
DEFENSE:And that’s all you said to him?
 
            WITNESS:     I don’t recall if I told him that where I was going was to the scene of the
accident. I don’t recall that.

            Rule 611 governs the interrogation and presentation of witnesses at trial. Tex.R.Evid. 611.
The trial court has reasonable discretion to control the mode and order of interrogating witnesses in
order to: (1) make the interrogation and presentation effective for the ascertainment of the truth; (2)
avoid needless consumption of time; and (3) to protect witnesses from harassment or undue
embarrassment. See Tex.R.Evid. 611(a). A witness may be cross-examined on any matter relevant
to any issue, including credibility. Tex.R.Evid. 611(b). Except as may be necessary to develop the
testimony of a witness, leading questions should not be used on direct examination. Tex.R.Evid.
611(c). But leading questions should be permitted on cross-examination. Id . When a party calls
a hostile witness, an adverse party, or a witness identified with an adverse party, interrogation may
proceed by leading questions. Id.
            The mere fact that a question may be answered by a simple “yes” or “no”will not render it
impermissibly leading. Newsome v. State, 829 S.W.2d 260, 269 (Tex.App.--Dallas 1992, pet. ref’d). 
A leading question is one which instructs the witness how to answer or puts words into the witness’s
mouth. Id. Permitting leading questions on direct examination is a matter within the sound
discretion of the trial court. Wyatt v. State, 23 S.W.3d 18, 28 (Tex.Crim.App. 2000). Unless
Appellant was unduly prejudiced, no abuse of discretion can be shown. Id.; Hernandez v. State, 643
S.W.2d 397, 400 (Tex.Crim.App. 1982); see also Ballew v. State, 452 S.W.2d 460, 461 n.1
(Tex.Crim.App. 1970) (“The matter of permitting the asking of leading questions rests in the sound
discretion of the trial judge, and unless the defendant can show that he was unduly prejudiced by
virtue of such questions, no reversal of his conviction can be had.”).
            Each question that was disallowed by the court required Appellant to confirm or deny
statements of her lawyer. The court did not prevent the questions from being asked; the court
instructed counsel to rephrase the question. Appellant was eventually able to deny that her back hurt
from the accident and to deny that she said anything incriminating to Officer Calderon. As Appellant
is unable to demonstrate harm, we find no abuse of discretion. Issue Three is overruled.
FACTUAL SUFFICIENCY
            In Issue Four, Appellant complains that the evidence is factually insufficient to support the
conviction. Specifically, she argues that no witness at trial identified her as the driver, that the
evidence was too weak to support the conviction, and that the State did not refute her defensive
theory.
            In reviewing the factual sufficiency of the evidence to support a conviction, we are to view
all the evidence in a neutral light, favoring neither party. Johnson v. State, 23 S.W.3d 1, 7
(Tex.Crim.App. 2000); Clewis v. State, 922 S.W.2d 126, 129 (Tex.Crim.App. 1996). Evidence is
factually insufficient if it is so weak that it would be clearly wrong and manifestly unjust to allow
the verdict to stand, or the finding of guilt is against the great weight and preponderance of the
available evidence. Johnson, 23 S.W.3d at 11. Therefore, the question we must consider in
conducting a factual sufficiency review is whether a neutral review of all the evidence, both for and
against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine
confidence in the fact finder’s determination, or the proof of guilt, although adequate if taken alone,
is greatly outweighed by contrary proof. See id. In performing this review, we are to give due
deference to the fact finder’s determinations. See id. at 8-9; Clewis, 922 S.W.2d at 136. The fact
finder is the judge of the credibility of the witnesses and may “believe all, some, or none of the
testimony.” Chambers v. State, 805 S.W.2d 459, 461 (Tex.Crim.App. 1991). Consequently, we may
find the evidence factually insufficient only where necessary to prevent a manifest injustice from
occurring. See Johnson, 23 S.W.3d at 9, 12; Cain v. State, 958 S.W.2d 404, 407 (Tex.Crim.App.
1997).
            The State’s evidence demonstrated that the Geo was registered to Appellant. One eyewitness
testified at trial that the driver was a woman. Another eyewitness who did not testify identified
Appellant as the driver. Her identification was admitted through the testimony of Officer Calderon. 
Appellant told Officer Calderon that the collision was her first accident, that she had panicked, and
that she was going back to the scene when the police arrived at her home.
            Viewing the evidence in a neutral light, we conclude that the jury was rationally justified in
finding beyond a reasonable doubt that Appellant was the driver, and that the direct and
circumstantial evidence was not so weak as to render the jury’s verdict clearly wrong and unjust. 
We overrule Issue Four.
PRE-TRIAL IDENTIFICATION
            In Issue Five, Appellant challenges that the denial of her motion to suppress the pretrial
identification. She maintains that there was insufficient evidence from which the court could
determine that the identification was reliable and that the identification procedures were
impermissibly suggestive.
            At the first hearing, Appellant testified that two police officers picked her up at her house and
took her to the scene of the accident. Two or three officers were present at the scene. The officers
spoke with one another, and they pointed at her and asked whether she was the driver. On cross-examination, she testified she did not see any of the officers question the witnesses, but on redirect,
she admitted that the officers questioned a female. Officer Calderon testified that he had arrived on
the scene five to ten minutes after the accident was reported. Appellant arrived within the next
twenty minutes. She was not handcuffed. Officer Calderon was talking with two witnesses, Petra
Arredondo and her sister Rosa Orozco, who had been in the car behind the complainant’s car. 
Arredondo pointed at Appellant and stated, “That’s her, that’s the one that was driving.” The 
identification was made spontaneously and without questioning by the officer. The hearing was
recessed and resumed three months later. At this hearing, defense counsel announced that he had
five witnesses available, including the complainant (Maria Chavez), Serina Thompson, Rosa Orozco,
Esmeralda Arrendondo, and Roderick Mendoza. Petra Arredondo was not present. Counsel asked
that he be allowed to call them to testify. The prosecutor objected that their testimony was irrelevant
as it was only the officer’s conduct that was relevant to identification. Defense counsel maintained
that the testimony was relevant, he did not anticipate that the officers would admit to any
wrongdoing, and he wanted to hear what the witnesses would say with regard to the totality of the
circumstances. The hearing was reset to allow the testimony of an officer who was not present in
court. Three months later, the hearing resumed yet again. Defense counsel argued that the “one-on-one” showup was unduly suggestive as Appellant was the only person brought to the scene, and she
arrived in a police car. The trial court denied the motion to suppress.
            At trial, Officer Alex Bastidas testified that he transported Appellant back to the scene of the
accident in a police car. She was not handcuffed. Officer Calderon reiterated that as he was
speaking to the witnesses, one of them pointed to the patrol car as it drove by and identified
Appellant as being the driver. Appellant’s objection to this testimony was overruled. Then, without
objection, Officer Calderon testified that the witness--Petra Arredondo--identified Appellant before
the officers established a one-on-one identification procedure. Officer Calderon informed his partner
that one of the witnesses had positively identified Appellant. The officer testified that he never saw
any officers pointing out Appellant to the witnesses, nor did he hear any officers tell the witnesses
that Appellant was the driver. Appellant claimed that the officers removed her from the patrol car,
talked among themselves, placed her back in the patrol car, and took her to the police station. Petra
Arredondo did not testify.
            An on-the-scene identification possesses a degree of suggestiveness, and under certain
circumstances it may amount to a denial of due process. See Garza v. State, 633 S.W.2d 508, 512
(Tex.Crim.App. 1981). Nevertheless, the admission of evidence of a one person show up, without
more, does not violate due process. Id. Where a witness has made an in-court identification,
Appellant must show that it was tainted by improper pretrial procedure and confrontation. In re
G.A.T., 16 S.W.3d 818, 827 (Tex.App.--Houston [14th Dist.] 2000, pet. denied). In determining the
admissibility of an in-court identification, we employ a two-step inquiry: (1) whether the
out-of-court identification procedure was impermissibly suggestive; and (2) whether that suggestive
procedure gave rise to a very substantial likelihood of irreparable misidentification. Id. We examine
the totality of the circumstances in any case to determine if due process has been violated. Id. These
circumstances include: (1) the witness’s opportunity to view; (2) the witness’s degree of attention;
(3) the accuracy of the description; (4) the witness’s level of certainty; and (5) the time between the
crime and the confrontation. Garza, 633 S.W.2d at 513.
            In weighing these factors, the burden in on the accused to show, by clear and convincing
evidence, that the witness’s identification was unreliable. See Pace v. State, 986 S.W.2d 740, 744
(Tex.App.--El Paso 1999, pet. ref’d). The trial court’s ruling admitting the identification is reviewed
under an abuse of discretion standard, and the trial court’s ruling should not be overturned if it is
supported by the record. See id.
            The evidence indicates that Appellant was brought back to the scene fifteen to thirty minutes
after the collision. Petra Arredondo positively identified Appellant, and she did so spontaneously. 
There was no specific description given by the witness, but one of the primary factors we consider
is whether the police prompted any of the witnesses to identify the suspect. See Jackson v. State, 657
S.W.2d 123, 125 (Tex.Crim.App. 1983); Doty v. State, 820 S.W.2d 918, 922 (Tex.App.--Fort Worth
1991, pet. ref’d). There is no indication here that the police prompted the witness to identify
Appellant. Finding that Appellant did not meet her burden to demonstrate that the identification was
unreliable or suggestive, we overrule Issue Five.
RIGHT TO COMPULSORY PROCESS
            In Issue Six, Appellant maintains that the court erred by refusing to allow her to present
witnesses at the pretrial suppression hearing. Specifically, she contends that the testimony of the
civilian witnesses was clearly relevant to the reliability of the identification.
            An accused has a Sixth Amendment right to compulsory process which includes the right to
call and present witnesses in one’s own defense. Coleman v. State, 966 S.W.2d 525, 527
(Tex.Crim.App. 1998). However, this right guarantees only the right to secure the attendance of
witnesses whose testimony would be both favorable and material to the defense. Id. at 527-28. The
burden is on defendant to make a plausible showing to the trial court, by sworn evidence or agreed
facts, that the particular witness’s testimony would be both material and favorable. Id. at 528. 
Failure to make this demonstration results in no Sixth Amendment violation, and no error is shown. 
Id.; Perkins v. State, 902 S.W.2d 88, 97 (Tex.App.--El Paso), supplemental op., 905 S.W.2d 452
(Tex.App.--El Paso 1995, pet. ref’d).
            Appellant failed to make an offer of proof demonstrating what the testimony of the witnesses
would have been save for defense counsel’s statement to the court that he wanted to hear what the
witnesses would have to say. She has thus waived error. We overrule Issue Six and affirm the
judgment of the trial court.
 
                                                                        ANN CRAWFORD McCLURE, Justice

February 8, 2007

Before Chew, C.J., McClure, J., and Barajas, C.J. (Ret.)
Barajas, C.J. (Ret.), sitting by assignment, not participating

(Do Not Publish)