# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-17-00779-CR

**Alfredo Zapien-Garcia, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF HAYS COUNTY, 22ND JUDICIAL DISTRICT NO. CR-16-0020, HONORABLE R. BRUCE BOYER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Alfredo Zapien-Garcia was charged with driving while intoxicated with two prior convictions in 2005 and 2011 for driving while intoxicated. *See* Tex. Penal Code §§ 49.04, .09(b)(2). At the end of the guilt-or-innocence phase, the jury found him guilty of the charged offense. At the end of the punishment phase, the jury recommended that he be sentenced to ten years' imprisonment. *See id.* § 12.34. The district court rendered its judgment of conviction as per the jury's verdicts. In three issues on appeal, Zapien-Garcia contends that the district court erred by amending the application paragraph of the jury charge during closing argument, by allowing the State to present improper jury argument, by prohibiting him from introducing during the punishment phase evidence regarding one of his prior convictions and his back time in the county jail pending trial, and by failing to grant his pretrial motion challenging the propriety of allowing his 2011 conviction to serve as an element of the charged offense at issue to elevate the offense level. We will affirm the district court's judgment of conviction.

## BACKGROUND

The following summary comes from the testimony and other evidence at trial. While driving home on a highway at night, Shawn Wilcox observed Zapien-Garcia driving and noticed that his vehicle was not "staying within the same . . . lane" but was instead drifting onto the shoulder. Further, Wilcox saw Zapien-Garcia nearly hit several vehicles in the lane next to him when he attempted to move back into his lane of traffic. In addition, Wilcox noticed Zapien-Garcia scrape a cement barrier with his car. After Wilcox observed Zapien-Garcia leave the highway and park near a gas station, she called the police to report what she had seen. During Wilcox's testimony, a recording of her 911 call was admitted into evidence and played for the jury. The recording is generally consistent with Wilcox's testimony, in which she described Zapien-Garcia's erratic driving and how he nearly hit more than one car.

After Wilcox called 911, Officer James Jones responded to the scene and located Zapien-Garcia. Officer Jones noticed that Zapien-Garcia "was unsteady on his feet" and had "bloodshot eyes" and "an odor of alcoholic beverage on his breath." Officer Jones testified that Zapien-Garcia admitted to drinking a "22-and-a-half-ounce" beer "about an hour" before arriving at the gas station. Officer Jones noticed in Zapien-Garcia's car "prescription pill bottles" for "Promethazine, Tamsulosin, and 600-milligram ibuprofen" with labels "warning not to mix the medications with alcohol." Zapien-Garcia admitted to taking those medications around the same time that he was drinking beer. Next, Officer Jones asked Zapien-Garcia to submit to field-sobriety testing and asked Officer Araseli Amaya to translate the instructions into Spanish. During the testing, Zapien-Garcia had difficulty following the instructions for the horizontal-gaze-nystagmus test, displayed "six out of six clues" of intoxication during that test, was "unable to maintain" the

2

start position for the walk-and-turn test, "almost fell over twice" during that test, and "almost fell over when he picked up his foot" during the one-leg-stand test. After concluding that Zapien-Garcia was intoxicated, Officer Jones arrested him, and Zapien-Garcia fell asleep in the patrol car on the way to jail. In Officer Jones's testimony, he agreed that Promethazine is an antihistamine and that antihistamines can cause individuals to display a positive result in a nystagmus test. At trial, recordings of Officer Jones's interaction with Zapien-Garcia were admitted into evidence, and those recordings are generally consistent with Officer Jones's testimony.

When Officer Amaya arrived on the scene, she translated Officer Jones's instructions to Zapien-Garcia. In addition, she had to remind Zapien-Garcia to remain still and to follow the directions for the field-sobriety tests multiple times, and she observed him stumble when he walked. Officer Amaya noted that his mental faculties did not appear to be normal at several points during his interaction with the police and that he was swaying during the field-sobriety testing. Although Officer Amaya did not specifically list in her report that Zapien-Garcia smelled like alcohol, had bloodshot eyes, or was slurring his speech, she was not closely observing him or his performance on the field-sobriety tests because she was focused on translating and securing the scene.

In a hearing outside the presence of the jury, the parties discussed changes to the jury charge and ultimately agreed to the charge language. After both sides rested and closed, the district court read the charge to the jury. The charge defined intoxication as "not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body." However, the abstract and application sections of the charge instructed that the State had alleged that Zapien-Garcia was intoxicated "by either . . . not having the normal use of mental

3

faculties" or "physical faculties by reason of the introduction of alcohol into the body" and did not mention controlled substances or drugs.

During its closing argument, the State argued that the jury could find that Zapien-Garcia was intoxicated from drinking beer and then mentioned that there was evidence that he also took medications. Zapien-Garcia objected that the charge only "covers alcohol," and the district court sustained that objection and instructed the jury to disregard the argument pertaining to the medications found in the car. In his closing argument, Zapien-Garcia stated that the jury could not consider whether he took prescription drugs. The State objected and argued that Zapien-Garcia's statement was contrary to the definition of intoxication in the charge and misstated the law. The district court sustained the State's objection.

Later during Zapien-Garcia's closing argument, the State requested a bench conference on the charge. During the conference, the State argued that the jury charge omitted the use of drugs, asked the district court to amend the charge, and explained that the State was making its request before Zapien-Garcia concluded his closing argument to allow him time to present argument regarding his use of drugs. After excusing the jury to consider the parties' arguments, the district court explained that it would not amend the written charge but would allow the State to argue that Zapien-Garcia's potential intoxication by alcohol was "enhanced or altered by the drugs" or that the drugs "may have had some effect on the alcohol." Further, the district court stated that Zapien-Garcia could still make arguments regarding the drugs found in his car, and the district court agreed to give him "an unlimited opportunity to address the issue."

Following the district court's ruling, Zapien-Garcia continued his closing argument, went over the definition of intoxication found in the charge, emphasized that the application portion

4

required the State to prove "alcohol impairment," opined that the State might argue that his use of prescription medicines might have influenced his reaction to alcohol, and urged that the State had to prove intoxication by alcohol consumption. Later, Zapien-Garcia asserted that the State wanted to argue that the application portion of the charge allowed the jury to consider whether his intoxication was "drug-related[] too" but that the charge did not authorize that. At that point, the State objected, and the district court sustained the objection.

During the State's closing argument, the State referred to the definition of intoxication as including the use of drugs, but Zapien-Garcia objected and asserted that the State's argument was inconsistent with the application paragraph of the charge. The district court overruled that objection. The State then argued that the jury could consider the evidence of Zapien-Garcia's use of drugs along with the labels warning about consuming alcohol while on those medications to decide whether the medications had an effect on the alcohol in his system when determining whether he was intoxicated.

After both sides finished their closing arguments, the jury deliberated and found Zapien-Garcia guilty of driving while intoxicated with two prior convictions, and Zapien-Garcia was sentenced to ten years' imprisonment.

**DISCUSSION**

In his first issue, Zapien-Garcia contends that the district court erred by orally amending the application paragraph of the charge and by allowing the State to argue to the jury that it could consider the potential interaction between prescription medication and alcohol when deciding if he was intoxicated. In his second issue, Zapien-Garcia asserts that the district court

5

erred by preventing him from presenting evidence regarding the details of one of his prior arrests for driving while intoxicated and regarding any "back credit" that he had stemming from his confinement after his arrest in the present case. Finally, Zapien-Garcia urges that the district court erred by failing to grant his motion challenging the propriety of using his 2011 conviction to enhance the offense level in this case. We will address Zapien-Garcia's issue regarding the State's closing argument and his issue regarding the prior conviction before addressing his issue concerning the evidentiary rulings made by the district court during the punishment phase.

**Closing Argument**

In his first issue on appeal, Zapien-Garcia presents several related arguments pertaining to the jury charge and to the State's closing argument.

In his first set of arguments, Zapien-Garcia asserts that the district court erred when it decided to amend the jury charge during his closing argument in response to the State's objection, allowing the jury to consider the impact that prescription drugs might have had on his potential intoxication from drinking alcohol. When making these assertions, Zapien-Garcia notes that the definition for intoxication contained in the abstract portion of the jury charge explained that an individual can be intoxicated by the consumption of alcohol, drugs, or a combination of those items, but he highlights that the application paragraph as written instructed the jury to consider whether his mental or physical faculties were impaired by his drinking alcohol and provided no instruction that the jury could consider his use of drugs. *See Plata v. State*, 926 S.W.2d 300, 302 (Tex. Crim. App. 1996) (explaining that "abstract or definitional paragraphs serve as a kind of glossary to help the jury understand the meaning of concepts and terms used in the application paragraphs of the charge" and

6

that meaning of jury charge should be obtained "from the whole charge, not just from a certain few instructions read in isolation"), *overruled on other grounds by Malik v. State*, 953 S.W.2d 234 (Tex. Crim. App. 1997). Moreover, Zapien-Garcia contends that the district court's amendment was not permissible under article 36.16 of the Code of Criminal Procedure. *See* Tex. Code Crim. Proc. art. 36.16 (setting out circumstances in which changes to charge may be made after closing arguments have begun). In a related set of arguments in his first issue, Zapien-Garcia contends that after the district court amended the charge, the State improperly urged during its closing argument that the jury was able to consider the effects of ingesting a drug when determining whether he was intoxicated by alcohol, and he asserts that the district court erred when it overruled his objections to the State's improper jury argument. *See Schermerhorn v. State*, No. 08-13-00236-CR, 2015 WL 4035226, at *2 (Tex. App.—El Paso July 1, 2015, pet. ref'd) (not designated for publication) (stating that "it is error for the State to present a statement of law that is contrary to that presented in the jury charge").

As an initial matter, we note that the district court made no amendments to the written charge to the jury. Moreover, although the district court informed the parties that they would be allowed to present closing arguments regarding the potential impact that Zapien-Garcia's consumption of prescription drugs might have had on his intoxication from alcohol, it made those statements outside the jury's presence. *Cf. Young v. State*, 382 S.W.3d 414, 423 (Tex. App.—Texarkana 2012, pet. ref'd) (explaining that "[s]upplementary oral instructions given to the jury with the written jury charge or after deliberations have begun are considered a part of the jury charge"). Accordingly, we cannot agree with Zapien-Garcia's suggestion that the jury charge was

7

amended in this case and will instead construe his arguments, consistent with the remainder of his briefing, as asserting that the district court erred by allowing the State to present improper jury arguments during its closing.

Proper jury argument falls into one of the following categories: "(1) summation of the evidence presented at trial, (2) reasonable deduction drawn from that evidence, (3) answer to the opposing counsel's argument, or (4) a plea for law enforcement." *See Jackson v. State*, 17 S.W.3d 664, 673 (Tex. Crim. App. 2000). "The State is permitted to draw reasonable inferences from the evidence and is to be afforded wide latitude in its jury arguments as long as counsel's argument is supported by the evidence and in good faith." *Jimenez v. State*, 240 S.W.3d 384, 407 (Tex. App.—Austin 2007, pet. ref'd). "[F]or an improper jury argument to warrant a reversal, it must be 'extreme or manifestly improper.'" *Kelly v. State*, No. 02-08-00364-CR, 2010 WL 3834526, at *14 (Tex. App.—Fort Worth Sept. 30, 2010, no pet.) (mem. op., not designated for publication) (quoting *Guidry v. State*, 9 S.W.3d 133, 154 (Tex. Crim. App. 1999)).

During the trial, evidence was presented indicating that Zapien-Garcia admitted to drinking alcohol and to taking prescription drugs at approximately the same time and shortly before driving and that the three prescription bottles each had a label warning against taking those medicines with alcohol. Moreover, as set out above, the jury charge defined intoxication as not having the normal use of physical or mental faculties as a result of consuming "alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body" and seemingly authorized the jury to consider the potential interaction between alcohol and drugs when deciding if Zapien-Garcia was intoxicated by alcohol. *Compare*

8

*Everitt v. State*, No. 01-10-00504-CR, 2014 WL 586100, at *2, *3 (Tex. App.—Houston [1st Dist.] Feb. 13, 2014, no pet.) (mem. op., not designated for publication) (noting that jury charge "defined intoxication as 'not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, or a combination of two or more of those substances into the body'" and concluding that evidence that defendant "used hydrocodone tends to make it more probable that he was intoxicated by reason of introduction of alcohol or drugs or both"), *with Layton v. State*, 280 S.W.3d 235, 241 (Tex. Crim. App. 2009) (highlighting that definition of intoxication in jury charge only referenced "'the introduction of alcohol into the body'" and determining that evidence of defendant taking prescription drugs between 14 and 24 hours before driving was "not relevant" absent showing of "a synergistic effect of Appellant's degree of intoxication by alcohol"). For these reasons, the State's arguments regarding the evidence that Zapien-Garcia ingested the medications found in his car and regarding their potential impact on his intoxication by alcohol were arguably summaries of and reasonable deductions from that evidence, were not contrary to the law presented in the jury charge, and did not exceed the scope of permissible jury argument.

However, even assuming that the State exceeded the scope of permissible jury argument, we would be unable to conclude that Zapien-Garcia was harmed in this case. In "assessing the impact of the harm arising from jury argument error," reviewing courts consider whether the defendant was harmed under Rule of Appellate Procedure 44.2(b). *See Berry v. State*, 233 S.W.3d 847, 858, 859 (Tex. Crim. App. 2007). Under that rule, nonconstitutional errors "must be disregarded" if they did "not affect substantial rights." Tex. R. App. P. 44.2(b). When determining

9

whether improper jury argument affected a defendant's substantial rights, reviewing courts consider the following: "(1) the severity of the misconduct (the magnitude of the prejudicial effect of the prosecutor's remarks); (2) the measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the judge); and, (3) the certainty of conviction absent the misconduct (the strength of the evidence supporting the conviction)." *Berry*, 233 S.W.3d at 858-59.

In his brief, Zapien-Garcia contends that he was harmed because the State made repeated improper assertions in its closing that the jury could consider the potential impact that taking prescription medicine might have had on his intoxication from alcohol. Further, he asserts that there was only "scant" evidence that he was intoxicated by alcohol because he only "conceded to having one 23 ounce beer," because Officer Amaya did not make any note in her report regarding seeing any signs of intoxication, because Officer Jones agreed that positive results from the horizontal-gaze-nystagmus test can be caused by taking antihistamines, and because one of the prescriptions that was found in the car was an antihistamine.

As set out previously, before the hearing held outside the presence of the jury regarding whether an amendment to the charge should be made, the State initially asserted in its closing argument that the jury could consider Zapien-Garcia's use of drugs as a basis for finding him guilty. After Zapien-Garcia objected, the district court sustained the objection and instructed the jury to "disregard any issues with regards to medications." *See Schirmer v. State*, No. 03-97-00822-CR, 1999 WL 331696, at *4 (Tex. App.—Austin May 27, 1999, no pet.) (not designated for publication) (stating that reviewing "court presumes that a trial court's instruction to disregard will be followed by the jury"). Later during the State's closing and after the district court declined to amend the jury

10

charge, the State asserted that the jury could consider the evidence of the drugs when deciding whether those drugs had "an amplifying" effect on his intoxication from alcohol, and no instructions to disregard those statements were given.

However, the State's argument largely focused on the testimony and other evidence indicating that Zapien-Garcia was intoxicated due to alcohol consumption and describing his driving and his performance on the field-sobriety tests. Moreover, the evidence presented at trial through witness testimony and various recordings established that Zapien-Garcia was driving in a reckless and dangerous manner before the police interacted with him; that he admitted to drinking alcohol shortly before he started driving on the highway; that he displayed signs of intoxication during his interactions with police, including having an odor of alcohol on his breath, bloodshot eyes, and difficulty balancing; that he displayed signs of intoxication during his field-sobriety testing, including difficulty maintaining his balance; that he refused to provide a blood or breath sample for alcohol-concentration testing; and that he fell asleep in the back of the patrol car. This evidence independently supported Zapien-Garcia's conviction for driving while intoxicated.

Accordingly, we conclude that any error stemming from the State's allegedly improper jury argument did not affect Zapien-Garcia's substantial rights and was, therefore, harmless.

In another set of arguments in his first issue, Zapien-Garcia contends that by allowing the State to argue that the jury could consider the effect that taking drugs might have had on his intoxication from alcohol, the district court cut off his ability to present his defense and, thereby, denied him the right to effective counsel. *See Herring v. New York*, 422 U.S. 853, 860-62 (1975) (observing that right to effective assistance of counsel applies to closing argument); *see also Wilson*

11

*v. State*, 473 S.W.3d 889, 902 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd) (noting that "[a] trial court has broad discretion in controlling the scope of closing argument, but it may not prevent defense counsel from making a point essential to the defense" and that "[p]rohibiting counsel from making a particular jury argument" can constitute denial of right to counsel). In essence, Zapien-Garcia asserts that he had prepared a closing argument based on the premise that the State was required to prove that he was intoxicated by alcohol and alcohol alone and that he was prepared to argue that the evidence of intoxication by alcohol was insufficient but that the district court prohibited him from presenting this argument when it allowed the State to present argument regarding the effect that drugs might have had on his intoxication.

As noted previously, both before and after the district court explained that the parties could present argument regarding the impact drugs may have had on his intoxication from alcohol, Zapien-Garcia did present his argument that the State had to prove his intoxication was caused by alcohol. In addition, the district court explained that it would give Zapien-Garcia all the time that he needed to present any argument he wanted to make regarding the evidence pertaining to his use of drugs. Moreover, the district court's clarification was consistent with the definition of intoxication found in the jury charge and arguably "was more favorable to" him than it could have been because the district court could arguably have amended the jury charge to provide an instruction that the jury could consider whether he was intoxicated due to his use of prescription drugs alone rather than limiting the jury's consideration of evidence regarding his drug use to the issue of whether his use of prescription medicines influenced or enhanced his intoxication from drinking alcohol. *Cf. Teamer v. State*, 429 S.W.3d 164, 168, 175 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (highlighting

12

that abstract portion of jury charge contained correct instruction when noting that subsequent amendment to correct application portion did not deprive defendant of right to counsel).

Additionally, Zapien-Garcia did not admit either that he was intoxicated because he ingested the drugs found in his car or that the drugs may have affected his level of intoxication from alcohol before the district court explained that it would allow argument regarding the interaction of the drugs and alcohol. Therefore, he still had the option of presenting a viable defense to the jury that the drugs had no effect on him. *Cf. Murray v. State*, 857 S.W.2d 806, 807, 808, 811-12 (Tex. App.—Fort Worth 1993, pet. ref'd) (determining that defendant was essentially denied effective assistance of counsel where defendant, relying on absence of instruction for phrase "'[i]n the course of committing theft'" in jury charge, admitted during his closing argument that he stole property at issue but argued that alleged assault forming basis for robbery offense did not occur until after theft had been completed and where trial court amended jury charge after jury began deliberating and added language specifying that "'[i]n the course of committing theft' means conduct that occurs in an attempt to commit, during the commission, or in immediate flight after the attempt or commission of theft'"); *Moore v. State*, 848 S.W.2d 920, 921, 923 (Tex. App.—Houston [1st Dist.] 1993, pet. ref'd) (concluding that additional time for argument did not cure error stemming from amendment to charge during argument where counsel relied on terms of original jury charge that did not include instruction on law of parties because "the same jury that may have found counsel's argument persuasive" that charge did not authorize conviction when someone other than defendant delivered

13

cocaine "would have doubtless found counsel's second argument absurd" that no cocaine had been delivered at all).[1]

Finally, during his closing, Zapien-Garcia emphasized arguments that applied regardless of any argument concerning his use of prescription medicine. For example, Zapien-Garcia asserted that the evidence was insufficient to meet the State's burden, that Officer Jones was biased, that the erratic driving reported by Wilcox was caused by him having a flat tire, that his injuries prohibited him from performing the field-sobriety tests, that Officer Jones was aware of those injuries but insisted that he perform the tests anyway, that the results of one of the tests indicated that he was not intoxicated, that there were problems with the results of the nystagmus test, and that the results of the nystagmus test could have been due to his taking an antihistamine.

---

[1] As support for his argument that the district court's actions deprived him of the right to present a central defensive theory, Zapien-Garcia refers to *Lemos v. State*, 130 S.W.3d 888 (Tex. App.—El Paso 2004, no pet.). In that case, Lemos was charged with intoxication manslaughter, and testing performed on a sample of his blood taken a few hours after the vehicle collision showed that Lemos had a blood-alcohol concentration of 0.10. *Id.* at 889, 890. During his closing argument, Lemos attempted to argue that there was no testing done at the time of the collision and that the jury could infer that Lemos's alcohol concentration went up after the time of the collision, but the trial court sustained the State's objection that Lemos was making an improper argument. *Id.* at 890, 891. Moreover, the trial court allowed the State to argue "the inverse" even though Lemos objected on the ground that there was no evidence to support a conclusion that he was intoxicated at the time of the collision. *Id.* at 891-92. Ultimately, the appellate court determined that "the erroneous denial of a legitimate defensive theory caused Lemos harm." *Id.* at 893.

We find *Lemos* to be distinguishable from the circumstances present here. In this case, Zapien-Garcia was not prohibited from arguing a reasonable inference based on the evidence presented at trial. Instead, the district court explained to the parties that the State could present argument regarding the potential synergistic effects that taking prescription pills might have had on his intoxication by alcohol based on the evidence presented at trial, and Zapien-Garcia was free to argue that the evidence presented at trial did not establish that any interaction occurred.

14

Accordingly, we cannot conclude that the district court's rulings deprived Zapien-Garcia of his ability to present his defense in this case.

For all the reasons given above, we overrule Zapien-Garcia's first issue on appeal.

**Enhancement Allegations**

In his third issue on appeal, Zapien-Garcia asserts that the district court erred by denying his pretrial "Motion to Quash Indictment," which challenged the propriety of the use of his 2011 conviction as an enhancement element to the charged offense. In his motion, Zapien-Garcia explained that he pleaded guilty to the 2011 offense, that the offense level for the 2011 offense was elevated by his prior convictions for driving while intoxicated from 2002 and 2005, and that the 2005 offense was also used to enhance the offense level in the current case. Although Zapien-Garcia noted that he pleaded guilty to the 2002 offense, he asserted that the translated version of his waiver of rights accompanying his plea was an inaccurate translation and failed "to translate completely the English waiver of rights." For these reasons, Zapien-Garcia urged that the 2002 conviction should not have been used to enhance the offense level for the 2011 offense. Relatedly, Zapien-Garcia asserted that the attorney representing him in the 2011 matter provided ineffective assistance of counsel by failing to investigate whether he voluntarily pleaded guilty to the 2002 offense. In light of the preceding, Zapien-Garcia urged the district court to rule that the 2011 offense could not be used as a basis for enhancing the offense level in the current case.

The district court convened a hearing on the matter. During the hearing, the district court explained that although Zapien-Garcia's motion was styled as a motion to quash the indictment, he was "not really attacking" the elements of the indictment. For that reason, the district court stated

15

that it would "proceed with this as a habeas action, not a motion to quash, because it's not really attacking the indictment itself." During the hearing, Zapien-Garcia called several witnesses to the stand to testify regarding whether there were mistranslations present in the waiver form that he signed when pleading guilty to the 2002 offense, whether his attorney in the 2011 matter provided ineffective assistance of counsel, and whether he would have ultimately decided to contest the 2011 charges rather than plead guilty if his attorney had moved to overturn the 2002 conviction. In response, the State called several witnesses to provide testimony regarding Zapien-Garcia's ability to understand English and regarding whether he understood the rights that he was waiving when he pleaded guilty to the 2002 offense. At the conclusion of the hearing, the district court denied Zapien-Garcia's motion.

On appeal, Zapien-Garcia reasserts his claim that the 2002 conviction "resulted from an involuntary and unknowing plea" and that his trial attorney for the 2011 offense provided ineffective assistance of counsel. Regarding the ineffectiveness claim, Zapien-Garcia argues that if his attorney for the 2011 case had properly investigated the 2002 conviction, his attorney would have discovered that the 2002 plea was involuntary and that the 2002 conviction could not properly serve as an enhancement to raise the offense level in the 2011 case from a misdemeanor to a felony. *See* Tex. Penal Code § 49.09(b)(2). Moreover, Zapien-Garcia urges that if the offense level for the 2011 offense had not been enhanced, he would have successfully fought those charges instead of feeling forced to enter into a plea agreement as he did for the 2011 offense to avoid the possibility of a felony prison sentence being imposed. Finally, Zapien-Garcia insists that without the 2011 conviction being used to enhance the offense level in the current case, the present offense would

16

only be a misdemeanor because the only applicable enhancement would have been the 2005 conviction. *See id.*

Consistent with the district court's construction, we believe that Zapien-Garcia was attempting to present a habeas challenge to his 2002 and 2011 convictions rather than a challenge to the sufficiency of the charging instrument in this case. *See* Tex. Code Crim. Proc. arts. 27.03, .08, .09 (setting out types of challenges that may be made to indictment). However, rather than comply with the provisions of the Code of Criminal Procedure setting out the requirements and procedures for seeking postconviction relief from his 2002 misdemeanor conviction and his 2011 felony conviction, *see* Tex. Code Crim. Proc. arts. 11.07 (applying to postconviction relief from felony convictions), .09 (pertaining to relief from misdemeanor offenses); *see also Ex parte Kulow*, 563 S.W.3d 383, 388 (Tex. App.—Houston [1st Dist.] 2018, no pet.) (explaining that "[a] defendant convicted of a misdemeanor offense may attack the validity of the conviction by way of habeas corpus if he is either (1) confined or restrained as a result of a misdemeanor charge or conviction or (2) is no longer confined, but is subject to collateral legal consequences resulting from the conviction"), Zapien-Garcia elected to challenge his 2002 and 2011 convictions at a pretrial hearing for the current charges.

Although the use of a prior conviction for enhancement purposes in the trial of another offense may be challenged during those trial proceedings when the record establishes that the prior conviction would be void if properly attacked, *see Ex parte Millard*, 587 S.W.2d 703, 705 (Tex. Crim. App. 1979) (setting out circumstances in which propriety of use of enhancement allegation may be attacked); *Galloway v. State*, 578 S.W.2d 142, 143 (Tex. Crim. App. 1979) (noting that enhancement allegation "may be attacked" when record establishes that it would be void but that

17

"lesser infirmities in a prior conviction may not be raised"); *see also Rodriguez v. State*, No. 03-18-00260-CR, 2018 WL 6425018, at *14 (Tex. App.—Austin Dec. 7, 2018, pet. filed) (mem. op., not designated for publication) (concluding that enhancement allegation would be void because punishment assessed "was not authorized by law"), meritorious claims that a plea was involuntarily given or that a defendant was provided with ineffective assistance of counsel do not render a conviction void, *see Pena v. State*, 551 S.W.3d 367, 370 (Tex. App.—Amarillo 2018, no pet.) (addressing involuntary plea); *Cordero v. State*, No. 12-12-00365-CR, 2013 WL 3976048, at *1 (Tex. App.—Tyler July 31, 2013, pet. ref'd) (mem. op., not designated for publication) (pertaining to ineffectiveness claims).

In the absence of a successful postconviction habeas challenge to the 2002 and 2011 convictions and in the absence of a meritorious claim regarding the propriety of the use of the prior convictions as enhancements in this case, the district court was required to apply the "presumption of regularity with respect to guilty pleas," *see Ex parte Bishop*, No. 01-17-00923-CR, 2018 WL 5259897, at *4 (Tex. App.—Houston [1st Dist.] Oct. 23, 2018, pet. ref'd) (mem. op., not designated for publication), and the presumption "in favor of regularity of the proceedings and documents in the trial court," *see Armstrong v. State*, 781 S.W.2d 937, 942 (Tex. App.—Dallas 1989), *aff'd*, 805 S.W.2d 791 (Tex. Crim. App. 1991), when considering and ultimately denying Zapien-Garcia's motion.

Given these presumptions and based on the record in this case, we can see no error in the district court's ruling and, therefore, overrule Zapien-Garcia's third issue on appeal.

**Evidence Regarding Prior Offense and Back Credit**

In his second issue on appeal, Zapien-Garcia challenges two evidentiary rulings that the district court made during the punishment phase. First, Zapien-Garcia contends that the district court erred during the punishment phase of the trial by preventing him from presenting evidence regarding the allegedly "faulty translation of a waiver of his constitutional rights" that was used during the 2002 proceedings. When Zapien-Garcia attempted to introduce into evidence a "certified translation from Spanish to English of the waiver" that he signed as part of the 2002 proceedings, he asserted that he was not going to argue that the 2002 conviction was illegal, but he explained that the jury should be informed that the translation from the 2002 offense was improper. The State objected and argued that the translation was not relevant, "especially since" Zapien-Garcia stipulated to the terms of his prior convictions. After considering the arguments of the parties, the district court denied his request and explained that the evidence was not relevant to the current proceedings.

Appellate courts review a trial court's ruling regarding the admission or exclusion of evidence for an abuse of discretion. *See Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011). Under that standard, a trial court's ruling will only be deemed an abuse of discretion if it is so clearly wrong as to lie outside "the zone of reasonable disagreement," *Lopez v. State*, 86 S.W.3d 228, 230 (Tex. Crim. App. 2002), or is "arbitrary or unreasonable," *State v. Mechler*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005). "If the trial court's evidentiary ruling is correct on any theory of law applicable to that ruling, it will not be disturbed." *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011).

As set out above, the district court determined that the evidence pertaining to the 2002 conviction was not relevant. Under the Rules of Evidence, "[r]elevant evidence is admissible

19

unless" prohibited by "the United States or Texas Constitution," "a statute," the Rules of Evidence, or "other rules prescribed under statutory authority," and "[i]rrelevant evidence is not admissible." Tex. R. Evid. 402. Moreover, evidence is relevant when "it has any tendency to make a fact more or less probable than it would be without the evidence" and when "the fact is of consequence in determining the action." *Id.* R. 401. However, because "the sentencing phase presents different issues than those contemplated in the guilt/innocence phase[,] the Rule 401 definition of 'relevant' is not a 'perfect fit' in the sentencing context." *Mendiola v. State*, 21 S.W.3d 282, 285 (Tex. Crim. App. 2000) (quoting *Rogers v. State*, 991 S.W.2d 263, 265 (Tex. Crim. App. 1999)). Rather, the question to be determined is whether the evidence would be helpful to the jury when determining what sentence to impose. *Id.* In addition, during the punishment phase, the State or the defendant may present the following types of evidence regarding "any matter the" trial "court deems relevant":

> the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried, and, notwithstanding Rules 404 and 405, Texas Rules of Evidence, any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act.

Tex. Code Crim. Proc. art. 37.07, § 3(a)(1).

In light of the broad language set out above, we will assume without deciding that the district court abused its discretion by sustaining the State's relevance objection to the waiver for the 2002 offense. If an appellate court determines that a trial court abused its discretion when making an evidentiary determination, the appellate court must then evaluate whether the defendant was

20

harmed by the trial court's ruling. *See Kirby v. State*, 208 S.W.3d 568, 574 (Tex. App.—Austin 2006, no pet.).

Generally speaking, "the erroneous admission or exclusion of evidence is nonconstitutional error governed by Rule of Appellate Procedure 44.2(b)." *Melgar v. State*, 236 S.W.3d 302, 308 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd). For nonconstitutional errors in criminal cases, the error must be disregarded unless it affected the defendant's substantial rights. *See* Tex. R. App. P. 44.2(b). A substantial right is not affected "when, after examining the record as a whole, the reviewing court has a fair assurance that the error did not influence the jury or had but a slight effect." *McDonald v. State*, 179 S.W.3d 571, 578 (Tex. Crim. App. 2005). "In assessing the likelihood that the jury's decision was adversely affected by the error, the appellate court should consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case." *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002).

At the start of the punishment phase, the district court admitted into evidence judgments and other related documents pertaining to the 2002, 2005, and 2011 offenses, including the English version of the waiver that Zapien-Garcia signed for the 2002 offense. However, the State did not call any witnesses during the punishment phase and, therefore, did not call any witnesses to discuss Zapien-Garcia's prior convictions. Furthermore, although the State did mention several times that Zapien-Garcia was convicted of all three prior offenses during its argument, although the State did inform the jury that it could consider the prior convictions when assessing his punishment,

21

and although the State and Zapien-Garcia questioned his witnesses regarding their knowledge of the prior convictions, neither party asked questions regarding the underlying facts of the 2002 offense, and neither party referenced the waiver that he signed when entering his plea.

Additionally, as discussed above, Zapien-Garcia stipulated that he had previously been convicted of driving while intoxicated in 2005 and 2011, and he made no attempt to undermine the propriety of those convictions before the jury. During the punishment hearing, evidence was introduced pertaining to the 2005 offense, including that the offense level had been elevated because Zapien-Garcia was driving while intoxicated with his children in the car. *See* Tex. Penal Code § 49.045.

Moreover, in its closing argument, the State focused on the purposes of punishment, on Zapien-Garcia's history of drinking, on the likelihood that he will continue to drink and drive, and on his alleged lack of remorse. When presenting his closing argument, Zapien-Garcia emphasized that he had no criminal record for any offense other than driving while intoxicated, that he has a good relationship with his family, that he had reduced his drinking in the years leading up to his arrest in this case, that he had been able to satisfy the requirements of his community supervision for the 2002 and 2005 offenses, and that he made a mistake by taking prescription drugs for a medical condition on the night in question, and he urged the jury to impose a lenient sentence.

In light of the preceding, even if the district court erred by sustaining the State's objection to evidence regarding the alleged mistranslation of the waiver of rights from the 2002 offense, we conclude that the error did not affect Zapien-Garcia's substantial rights and, accordingly, did not result in harm warranting a reversal of his punishment.

22

In his second set of arguments in his second issue, Zapien-Garcia contends that the district court also erred during the punishment phase by not allowing him to present evidence regarding the "two years of back credit" that he had from serving time at county jail following his arrest in this case before the trial began. Specifically, during the testimony of his wife Elizabeth Melendez-Zapien, Zapien-Garcia attempted to ask his wife about how long he had been in jail since his arrest in this case, and the State objected and argued that this information was not proper testimony and was irrelevant. After considering the parties' arguments, the district court sustained the State's objection.

When challenging the district court's ruling on appeal, Zapien-Garcia contends that the amount of "back credit" that he had already served while awaiting trial would have been helpful to the jury in determining the appropriate sentence. Stated differently, Zapien-Garcia urges that it would have been beneficial for the jury to be able to consider the amount of time that he had already spent in jail when deciding whether to place him on community supervision or to release him "for time served." Moreover, Zapien-Garcia argues that in a situation like his where an individual has "substantial back time," a jury would be even more likely to take that into account when assessing its sentence. In fact, Zapien-Garcia notes that the jury in this case sent a jury note to the district court inquiring whether he had already served time for the current offense but that the district court explained that it could not answer the jury's question.

Although there is no statutory provision expressly prohibiting a jury from considering the amount of time that an individual has served while awaiting trial, article 37.07 of the Code of Criminal Procedure does prohibit a jury from considering "the extent to which good conduct time may be awarded to or forfeited by [a] particular defendant." *See* Tex. Code Crim. Proc. art. 37.07, § 4.

23

Even though good-conduct credit and the amount of time served pending trial are not precisely the same, they both serve as credits toward a defendant's sentence. *See id.* art. 42.03, § 2(a) (specifying that defendant is to be given "credit on the defendant's sentence for the time that the defendant has spent . . . in jail for the case"); *Hooper v. State*, No. 05-01-00369-CR, 2001 WL 1155780, at *1 (Tex. App.—Dallas Oct. 2, 2001, no pet.) (not designated for publication) (explaining that defendant "is entitled to credit against his sentence for all the time (other than that ordered as a condition of probation) he was confined from the date of his arrest until sentencing"). In light of this similarity, we cannot conclude that the district court abused its discretion when sustaining the State's objection to testimony pertaining to the amount of time that Zapien-Garcia spent in jail before trial.

For all of the reasons previously given, we overrule Zapien-Garcia's second issue on appeal.

## CONCLUSION

Having overruled all of Zapien-Garcia's issues on appeal, we affirm the district court's judgment of conviction.

_____

Thomas J. Baker, Justice

Before Justices Goodwin, Baker, and Triana

Affirmed

Filed:  May 31, 2019

Do Not Publish